764 So.2d 1113 (2000)
STATE of Louisiana
v.
Preston JOHNSON.
No. 99-KA-1117.
Court of Appeal of Louisiana, Fourth Circuit.
May 17, 2000.
*1115 Laura Pavy, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant-Appellant Preston Johnson.
*1116 (Court composed of Chief Judge ROBERT J. KLEES, Judge MOON LANDRIEU and Judge PATRICIA RIVET MURRAY).
KLEES, Chief Judge.
On October 1, 1998, the defendant, Preston Johnson, was indicted on one count of armed robbery in violation of La. R.S. 14:64 and one count of aggravated rape in violation of La. R.S. 14:42. The defendant entered pleas of not guilty to both counts at his arraignment on October 7, 1998. After a motion hearing on October 14, 1998, the trial court denied defendant's motions to suppress identification, statement and evidence. The defendant was found guilty as charged on both counts after a jury trial on November 23, 1998. On the same day, the defendant waived all legal delays. The trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence on his conviction for aggravated rape. The defendant was sentenced to fifty years at hard labor without benefit of probation, parole or suspension of sentence on his conviction for armed robbery. The trial court denied defendant's motion to reconsider sentence. Defendant's motion for appeal was granted and a return date of January 22, 1999 was set. The state then filed a multiple bill of information to which the defendant pled not guilty. The trial court adjudicated defendant a second offender at the multiple bill hearing on January 11, 1999. The trial court vacated the prior sentence imposed on the armed robbery conviction and resentenced to serve fifty years at hard labor without benefit of probation, parole or suspension of sentence. This appeal follows.

STATEMENT OF FACT
On July 27, 1998, Ms. W. was employed by a dentist as the office manager of his dental office located on Kabel Drive. Ms. W. arrived at work at approximately 7:00 a.m. that morning. She was usually the first person at the office and would open the office. When she pulled into the parking lot, she noticed that her husband had left a pack of cigarettes in the car. She checked to see if it was empty. She planned to throw the box away if it were empty. However, there was one cigarette left. When Ms. W. got out of her car, the defendant approached her and asked her for a cigarette. Ms. W. gave him the pack with one cigarette left. The defendant also asked for a light. Ms. W. gave the defendant her cigarette to light his cigarette. They spoke for a few minutes. The defendant asked if her office took walk-ins. She stated that they did not. He would have to make an appointment. Ms. W. then went into the office. She put her purse behind her desk. She went back outside to get a dental cart from her car. The defendant approached her again and asked if she needed help. She stated that she did not. Ms. W. took the cart into the office and proceeded to straighten the office. Ms. W. then went to the front desk and started working on some files that needed insurance claims. The defendant returned to her office and told her that there was a nail in her tire. He told her that she would need to have the tire fixed. The defendant then left the office. He again returned and told Ms. W. that she should not try to take the nail out of the tire. She asked if she could drive the vehicle at lunch to be repaired. The defendant said no. At that point, she opened the reception room door to check on her vehicle. When she did so, the defendant grabbed her arm and turned her around. He told her that he had a knife and wanted her money. She told him that she did not have much money with her. The defendant told her to sit down. She emptied her purse and showed him that she only had four dollars. The defendant told her to take off her jewelry. He took her rings, necklace and earrings. The defendant then asked if anyone else was in the office. She stated that no one else was in the office but that the other employees would be arriving soon. The defendant said that she better hope that they had more money *1117 that she had. The defendant took Ms. W. throughout the office. She opened each examining room and all closet doors to show that no one else was in the office. When they reached the last examining room, the defendant told her to get into the closet and take off her clothes. The defendant told her that he was going to take her clothes so she could not chase after him. The defendant then told her to get down on the closet floor. Ms. W. stated that she knelt down in the closet with her back to the defendant. The defendant told her to turn around. Her head was in the closet and her legs were outside the closet. The defendant grabbed her legs with his hands and raped her. The defendant told her that he was sticking a knife in her. The victim stated that she knew he penetrated her with his penis because he was holding her legs with his hands. After raping her, the defendant demanded the "PIN" for her credit card. The victim gave the defendant the information and he left. The victim then got dressed. She locked the door and called Kanzig's Cleaners. She also attempted to call the dentist at home. When the dentist arrived, she told him what had happened. He called the police and her family. The police took her to the hospital. While she was at the hospital, the police showed her a photographic lineup. She identified the defendant as the person who robbed and raped her. The victim also identified the defendant at trial as the person who robbed and raped her.
The dentist testified that he arrived at the office at approximately 8:00 a.m. He noticed that Ms. W. had not turned the "open" sign around. When he attempted to open the front door to the office, it was locked. She usually unlocked the door when she arrived in the morning. The dentist unlocked the door and walked into the office. Ms. W. was crying and emotionally upset. She told him about the robbery and the rape. The dentist stated that he was going to call the police. She told him not to call the police because the defendant had told her that he would kill her if the police were called. The dentist attempted to calm her and then called the police.
On the morning of July 27, 1998, S.W. was working at Kanzig's Cleaners, which is in the same strip mall as the Dentist's office. The cleaners is located approximately ten feet from the dentist office. She was working at the press, which is located near the window by the parking lot and Kabel Drive. At approximately 7:20 a.m., the phone rang in the cleaners. Another employee took the phone call. Immediately prior to the phone call, S.W. saw the defendant walk past the window. The defendant was walking away from the dentist's office and towards Danny & Clyde's restaurant. When the police arrived, she told them that she saw the defendant walk past the window and informed them that the defendant worked at Piccadilly Cafeteria.
Detective Armando Asaro responded to the robbery call at the dentist office. He interviewed the witnesses and the victim. S.W. gave him the defendant's name and place of employment. The officer then went to Piccadilly Cafeteria and obtained additional information on the defendant. The officer prepared a photographic lineup which included defendant's photograph. He presented the lineup to the victim at the hospital. The victim identified the defendant as the perpetrator. Detective Asaro obtained an arrest warrant for the defendant and a search warrant for the defendant's house. The officer found the victim's wallet, which included her driver's license, insurance card and checkbook, on the top of a light fixture in the defendant's house. The victim's wedding rings and necklace were found inside a radio's battery compartment. The knife was found in a dresser drawer in the defendant's bedroom. After completing the search, the officer advised the defendant he was under arrest. The defendant was taken to the rape squad office and then to Central Lockup.
*1118 Officer Mark Bonvillian participated in the search of the defendant's house. The officer located the victim's wallet inside a light fixture in the upstairs bathroom of defendant's house. Sergeant Steven Day also participated in the investigation. He found the victim's jewelry inside of a radio. Det. Asaro located the knife.
Detective Michelle Bowen assisted with the investigation. While on the scene, she noticed a clear liquid on the floor outside the closet where the victim was raped. This evidence seemed inconsistent with the information she received from the other officers that the rape occurred inside the closet. The officer then proceeded to the hospital where she spoke with the victim. After speaking with the victim, the officer realized the evidence was not inconsistent with the facts of the case.
Detective Ned Gonzalez was present when the defendant gave a statement to Sergeant Bossetta and Detective Bowen. Detective Bowen advised the defendant of his rights.
Dr. Huan Vu was an emergency medical resident at Charity Hospital on July 27, 1998. Dr. Vu performed an examination on the victim. Dr. Vu testified that the victim was emotionally distraught. She told the physician that an unknown black man came into her office and raped her. The examination revealed that the victim had sustained blunt trauma between her thigh and pelvis and to her right breast. No seminal fluid or semen were found.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1
In counsel's sole assignment of error, the defendant contends that the evidence was insufficient to sustain defendant's conviction for aggravated rape.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La. 1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
La. R.S. 14:42 defines aggravated rape as "a rape committed upon a person ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed... [w]hen the victim is prevented from resisting the act because the offender is armed with a dangerous weapon." "Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.... Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime." La. R.S. 14:41.
Defendant argues that the victim's testimony does not support the finding that a rape occurred. The defendant relies upon the victim's first statements to the dentist and the police officers that the defendant penetrated her with a knife and/or his finger. However, the witness testified at trial that she was emotionally *1119 distraught when she made the statements and did not want to confront the reality that the defendant had raped her. The victim stated at trial that the defendant did rape her. She testified that she knew he had penetrated her with his penis and finally admitted to the police officers that the defendant had raped her. The victim stated that the defendant held her legs with his hands and penetrated her. As the defendant was holding her legs with both hands, he could not have used a knife or his finger to penetrate her. The victim's testimony is consistent with the medical evidence as Dr. Vu stated that there were no cuts to the victim's vaginal area. Such testimony is sufficient to support the finding that the defendant did, in fact, rape the victim. The victim's testimony that she was raped while the defendant was armed with a knife is sufficient to sustain defendant's conviction for aggravated rape.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 1
In his first pro se assignment of error, the defendant contends that the dentist gave improper conclusion testimony. The testimony of which the defendant's complains concerning the dentist's description of the victim when he first saw her. The dentist stated "I unlocked the door. She came to the - excuse me. I unlocked the door and as I was coming into the office, she was walking up towards me and she was crying, sobbing and her face was extremely distorted, much as what you would be distorted if you had been hurt, injured, severely, that type of thing." Defendant objected, and the trial court sustained the objection. The trial court instructed the witness that he could not give any opinions or conclusions. He had to testify to the facts that he observed.
On appeal, the defendant suggests that the trial court should have admonished the jury to disregard the statement made by the dentist. However, defendant did not seek an admonition from the trial court. Thus, the defendant is precluded from arguing this issue on appeal. La. C.Cr.P. article 771; State v. Breaux, 598 So.2d 719 (La.App. 4th Cir.1992), writ denied, 609 So.2d 254 (La.1992).
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 2
In this assignment, the defendant argues that the State's redirect examination was outside the scope of redirect examination. During redirect examination, the prosecutor asked Dr. Vu if the victim related to him anything about the position of her legs. Dr. Vu began to testify: "She stated when she forced on to the floor, her legs." The defendant objected, stating: "The question is his examining her not as a fact witness, as to the events of the case. We've already had testimony about the first report at length from the dentist." The trial court overruled defendant's objection and permitted the prosecutor to continue to question the witness about the victim's statement to the physician about the rape.
It is apparent from the trial transcript that the defendant objected to the testimony on the basis of hearsay. The defendant objected to the physician's testimony because the victim "first report" of the rape was to the dentist. As the defendant's argument on appeal is different from his basis for objecting at trial, the defendant is precluded from raising the issue on appeal. La.C.Cr.P. article 841.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 3
The defendant also argues that the prosecutor improperly used leading questions in his examination of Ms. W. During direct examination, the prosecutor was trying to establish that a rape occurred.
Q. What did you tell them?
A. I told them that he told me that he stuck the knife inside of me but I knew it wasn't true. I know it wasn't *1120 the knife. I said, "I think he stuck his finger in me."
Q. Was that possible with the position you were in?
A. No.
Q. Because he was holding up your legs?
MR. MEYER:
Excuse me, Judge. Is the D.A. going to testify or the witness?
THE COURT:
I sustain the objection as leading. Don't lead your witness.
EXAMINATION BY MR. KELLEHER:
Q. Why would it have been impossible for him to penetrate
MR. MEYER:
I object to that, too. It's assuming something. It's the same thing as leading.
THE COURT:
I'll sustain that objection. Restate your question.
While the prosecutor did apparently attempt to use leading questions, the trial court sustained defendant's objections and ordered the prosecutor to restate his question. The prosecutor then restated his questions without leading the witness. As the trial court sustained defendant's objections and defendant did not seek an admonition, this issue is precluded from review on appeal. La.C.Cr.P. article 771; State v. Breaux, 598 So.2d 719 (La. App. 4th Cir.1992), writ denied, 609 So.2d 254 (La.1992). Additionally, the trial court's actions in sustaining the defendant's objections prevented the prosecutor's use of leading questions and cured any possible errors.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 4
The defendant further contends that his trial counsel was ineffective when he stipulated to Dr. Vu's expertise in emergency medicine.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir. 1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La. 1983); State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Garland, 482 So.2d 133 (La.App. 4th Cir.1986); State v. Landry, 499 So.2d 1320 (La.App.4th Cir.1986).
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
*1121 This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Defendant's trial counsel agreed to stipulate to Dr. Vu's expertise as a emergency room physician after learning that Dr. Vu was licensed to practice medicine in the State of Louisiana and was a resident in the field of emergency medicine. An attorney's decision to stipulate to an expert's qualifications as opposed to requiring the trial court to hold a Daubert hearing is within the realm of trial strategy. As such, defense counsel's decision to stipulate to Dr. Vu's expertise does not establish that counsel was ineffective. Further, the defendant has not shown any prejudice as a result of his counsel's stipulation.
This assignment is without merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 5
In his last assignment of error, the defendant contends that prosecutor presented false testimony at the suppression hearing concerning the search warrant for defendant's residence. During Detective Asaro's testimony at the suppression hearing, the State became aware that the copy of the search warrant in its possession was not signed. The prosecutor then asked Detective Asaro if the warrant had been presented to and signed by a magistrate. Detective Asaro stated that Magistrate Hansen signed the warrant. The prosecutor then stated that he would provide the Court with a copy of the signed warrant once the warrant was retrieved from the rape file or the Fourth District file. Defendant argues that the unsigned warrant constituted exculpatory evidence which the State should have presented to the defendant.
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Brady rule is based on due process of law. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment." State v. Rosiere, 488 So.2d 965, 970 (La.1986). The test for determining materiality was established in United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. The test for determining materiality is the same whether or not the defense makes a pretrial request for exculpatory evidence. Id.
In the case at bar, the defendant has not shown how the unsigned copy of the search warrant was exculpatory evidence. The warrant established the basis for searching the defendant's residence. The defendant was alleged to be the perpetrator of a robbery and rape which *1122 occurred earlier that day. Further, the defendant was informed at the suppression hearing that the signed warrant was still in the police files. Detective Asaro testified that the signed copy was still in the rape files or the Fourth District files. He also stated that the warrant had been presented to and signed by Magistrate Hansen.
In addition, there is no indication that the State produced false testimony. When the State became aware that its copy of the search warrant was unsigned, it informed the trial court that it would obtain a signed copy of the search warrant. There is nothing in the record to suggest that the State failed to produce the document for the trial court.
This assignment is without merit.
Accordingly, for the reasons expressed above, the conviction and sentence of defendant Preston Johnson are hereby affirmed.
AFFIRMED.