1Chief Judge WILLIAM H. BYRNES III.
The defendant was charged by grand jury indictment on July 15, 1999 with aggravated rape of a child under twelve, La. R.S. 14:42, and aggravated rape, La. R.S. 14:44. He was arraigned and pled not guilty. He filed a motion to suppress which was denied after a hearing October 1, 1999. After a judge trial on March 22, 2000, the defendant was found guilty as charged on the aggravated rape count, and guilty of the lesser offense of second degree kidnapping, La. R.S. 14:44.1. On April 3, 2000, the trial court sentenced him to life imprisonment without the benefit of parole, probation, or suspension of sentence on the aggravated rape, and twenty years at hard labor on the second degree kidnapping charge, with the first two years to be served without benefit of parole, probation or suspension of sentence. The sentences are to be served concurrently. The defendant immediately filed a motion to reconsider sentence, which was denied, and a motion for appeal.

ERRORS PATENT:

A review of the record for errors patent reveals none.

J¡FACTS:

The mother of the then ten year old victim began searching for her when she did not return from a corner store after having been gone about a half an hour. Near the store, the mother asked a neighbor, Ina Davis, if she had seen the child. Ms. Davis said she had not. Ms. Davis asked the mother if she could hear a child’s screams coming from behind an abandoned house. The mother told the store owner to call the police. She called out the child’s name, heard screams and then a muffled sound from behind a house, went behind the house while banging and screaming loudly, and heard the sound of someone jumping the fence.
The victim appeared, naked from the waist down, with dark pieces of material around her neck and one wrist. She was frightened and shaking and told her mother she had been raped. The police arrived *310 within two minutes. The mother was so upset she got sick. The police took mother and daughter to the hospital.
Ina Davis testified that she heard a child screaming, “Help, Help, Help, please somebody help me, Help me, Help me,” coming from an abandoned house that is behind Bob’s Grocery Store and that is very near her own house. She called 911. She ran into the street and found the child’s mother looking for her, and together they went toward the house.
Officers responded to the report of screams at the intersection of St. Roch and Urquhart between 9:00 and 10:00 p.m. The victim was crying and upset, and her hands were bound so tightly that she was in pain. The officers found a snack and a soft drink in the back yard of the abandoned house, and a t-shirt on the sidewalk in front of the house.
I a At the. scene, Sergeant Claude Flot spoke to Lillie Mae Davis. She testified that she had seen a man, wearing a black t-shirt and dark jeans, talking to the victim in front of the store. She stopped to speak to the man (the defendant) because she thought he was Donald Vicks. The defendant said he was Donald Vicks’s twin brother, Allen, and that Donald was in jail. She said no more than ten minutes passed between her seeing the defendant with the victim and then hearing the commotion in the neighborhood.
The parties stipulated that Donald Vicks was in jail the day of the crime.
An anonymous witness on the scene.said the suspect lived at 2131 Marais Street, and the officers immediately went there.
Sergeant Flot, Detective Arnould Williams and Officer Dewight Roussive went to the house, and the door was answered by the owner, Ken Lintingua. Williams told Lintingua he was investigating a rape and gave Lintingua a description and a name. Lintingua let the officers into the house and said that the defendant did in fact live there. The officers went into the house and spoke to another resident of the house, Sabrina Seals, who said the defendant had just gone out of the rear door. He was arrested as he tried to flee.
Seals said she had been living at 2131 Marais with Ken Lintingua, who is her cousin, and Donald and Allen Vicks, who are identical twins. The house was Ken’s, and he paid the bills. Ken and the defendant were lovers. She said the defendant had left the house around 5:00 p.m., wearing all black. He returned around 10:00 p.m. and was sweating. She gave the officers a pair of black jeans she had seen the defendant wearing when he left the house. She also identified the black shirt found at the scene as the one the defendant had been wearing.
|4The officers took the defendant to the hospital where the victim identified him. He was handcuffed and not wearing a shirt at the time.
Dr. Janet Rossi examined the victim and found scratches and bruises on her face consistent with her having been choked, and scratches and cuts on her wrists and hands. Rossi could find no trauma to her genitals, but the victim told her that the penetration had been a quick rather than a prolonged process.
The victim said she and her mother had returned home from a school pageant, and she asked her mother if she could go to the store to get a sandwich. Her mother placed the order, and she walked the block and a half to the store. The order was not ready, so she began playing with her friend Cassandra, a clerk in the store. The defendant started asking the girls their age, and they told him Cassandra was sixteen and to leave them alone. The vie- *311 tim told the defendant that she was ten, and the victim guessed his age as nineteen. He left the store, and she waited on the steps where Cassandra could watch her. She saw two friends, fourteen and eleven, playing nearby. The defendant again approached her, asked her whether she had a boyfriend to which she responded “no”, and whether she would be his girlfriend to which she said, “no.” The defendant then told her that he had had an eleven year old girlfriend with whom he had not had sex, but with whom he had made love, and that she had been hit by a car.
After the victim got her food and left the store, she noticed the defendant following her. She turned around and walked back in his direction so that he would not know where she lived. She crossed the street, and so did he. She saw two women walk up to the man and start talking to him. She thought he had stopped following her, so she stopped near the abandoned house to catch her breath ^because she had bronchitis and had gotten nervous. At that point, she was grabbed from behind and dragged into the yard.
The defendant told her that he would cut her throat if she did not stop screaming, but she continued to scream anyway. He tried to get her into the house, but she successfully struggled against him. The defendant took off his black t-shirt, tore it into three pieces, and used the pieces to tie and gag her. He made her take off her shorts and underwear. She tried to get away, but the defendant tried to choke her and threatened to kill her. She felt her “eyes closing” from being choked. He made her he down on the ground on her stomach. He tried to put his “private part” into her rear, but when he was unsuccessful, he turned her over and put his “private part” inside her. She then heard her mother calling her. The defendant ran, and she later identified him at the hospital. She identified him again at trial.
The defendant said he had not gone out the night of the crime, but had stayed home with his homosexual lover, Ken. He said he was putting the garbage out when he was arrested. He denied wearing black jeans. He said he had never met the victim.
He called Dwayne Spears, an inmate at parish prison, who said that he had seen the defendant at gay bars, that he knew the defendant was gay, and that he and other inmates had slept with him.

ASSIGNMENT OF ERROR ONE:

The defendant argues the trial court should have suppressed the victim’s identification of him because the one man “show up” identification of him was unduly suggestive and resulted in a substantial likelihood of misidentification. The | ¿trial court’s determination on the admissibility of identification evidence is entitled to great weight and will not be disturbed on appeal in the absence of an abuse of discretion. State v. Nogess, 98-0670, (La.App. 4 Cir. 3/3/99), 729 So.2d 132.
The identification of the defendant by the rape victim at the hospital where she was taken for treatment in the instant case is virtually identical to what was approved by the Louisiana Supreme Court in State v. Chapman, 410 So.2d 689, 708-709 (La.1981), appeal after remand 436 So.2d 451, where the court explained that:
At trial, the victim testified that she was in the hospital following the rape when she was shown defendant [emphasis added] and immediately recognized him as her assailant. Defendant moved to suppress any such trial testimony relating to the pre-trial identification and further argued that any in-court identification would be a poisonous *312 fruit of this initially prejudicial and suggestive confrontation.
The hospital identification occurred within two hours of the rape. The victim was at the hospital for examination by a doctor and treatment of her injuries. Following this examination, she was shown defendant, whose hands were cuffed behind his back. She identified him. [Emphasis added.] The State does not contend that this was not a one-on-one confrontation.
“One-on-one confrontation identifications are not favored. However, when a suspect is apprehended shortly after commission of an offense, a return to the scene of the crime for identification is permissible under appropriate circumstances. State v. Dunbar, 356 So.2d 956 (La., 1978). A prompt confrontation can promote fairness ‘by assuring reliability and the expeditious release of innocent suspects.’[1] State v. Maduell, 326 So.2d 820 at 825 (La.).” State v. Kenner, 384 So.2d 413, 416 (La.1980). [Emphasis added.]
See also State v. Kelly, 362 So.2d 1071 (La.1978).
In this case, the confrontation did not take place at the scene of the crime, yet arguably the same reasoning could be applied to the hospital identification which took place very shortly after the rape. [Emphasis added.]
This Court has held that:
“Even if an identification procedure is suggestive, an identification is admissible if the totality of the circumstances demonstrate that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); State v. Guillot, supra (353 So.2d 1005 (La.1977)). The likelihood of misidentification violates due process, not merely the suggestive procedure. Manson v. Brathwaite, supra; State v. Guillot, supra. Factors to be considered in determining the reliability of an identification include:
‘... the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.’ ” State v. Davis, 385 So.2d 193, 199 (La.1980).
A “one-on-one” confrontation between a suspect and the victim although generally not favored, is permissible when justified by the overall circumstances. State v. Johnson, 619 So.2d 1102, 1106 (La.App. 4 Cir.1993).
The hospital where the victim identified the defendant in the instant case and where the victim identified the defendant in Chapman, supra, is a neutral location, i.e., neither the crime scene nor the police station. There is nothing suggestive or prejudicial to the defendant about being identified in a neutral location rather than at the scene of the crime. One on one identifications at the scene of the crime occurring shortly after the crime have consistently been upheld where they | «are not otherwise found to be unduly suggestive. And where circumstances warrant, such identifications have even been upheld in police stations where some might argue that the location itself has the risk of being suggestive. State v. Brown, 519 So.2d 826 (La.App. 4 Cir.1988). A one on one identification at a neutral location is arguably even less likely to be suggestive and prejudicial than encountering the de *313 fendant at a police station or returning the defendant to the emotionally charged atmosphere of the crime scene. In State v. Williams, 536 So.2d 773 (La.App. 5 Cir.1988), the identification was upheld where the defendant was identified by witnesses shortly after the crime,
... about a mile from the scene of the crime, while the suspects were standing in custody of a number of uniformed police officers and with a spotlight focused upon them ...
Nor does the fact that the defendant was in handcuffs vitiate the identification. Chapman, supra; Brown, supra.
In the present case, the victim identified the defendant within hours of the crime. She had ample opportunity to view him while he tried to engage her in conversation inside and outside the store. She watched him as he followed her, and necessarily paid close attention to him because she was afraid he was following her to do her harm. At the hospital and again at trial she identified the defendant without hesitation. This Court may consider the positive nature of the victim’s identification. Nogess, supra. The victim’s testimony as a whole demonstrated keen powers of observation and an excellent memory. The identification was not prejudicial, and there was no substantial likelihood of misidentification. We find no abuse of the trial court’s discretion in its determination that the identification evidence was admissible.
19This assignment is without merit.

ASSIGNMENT OF ERROR TWO:

The defendant argues that the evidence was insufficient to support the conviction for aggravated rape, specifically he argues that the evidence was insufficient to prove penetration.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most favorable to the prosecution must be adopted. The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.” State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to treason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. *314 La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Ragas at p. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, p. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
Defendant was convicted of aggravated rape, a violation of La. R.S. 14:42. This court set out the elements of aggravated rape in State v. Johnson, 99-1117, pp. 6-7 (La.App. 4 Cir. 5/17/00), 764 So.2d 1113, writ denied 2000-2297 (La.11/17/00), 774 So.2d 973:
La. R.S. 14:42 defines aggravated rape as “a rape committed upon a person ... where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ... [2] [w]hen the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.” “Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent.... Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.” La. R.S. 14:41.
Johnson at p. 6-7, 764 So.2d at 1118.
In Johnson, the victim claimed she was raped inside of her office after arriving in the morning. A medical examination revealed blunt trauma between her thigh and pelvis and to her right breast, but no seminal fluid or semen were found. The victim’s dentist-employer testified that she was crying and upset when he arrived at the office shortly after the rape. The victim first stated to her dentist] t , employer and police officers that the defendant penetrated her with a knife with which he was armed, and/or his finger. However, she testified that she was emotionally distraught and did not want to confront the reality that the defendant had raped her. There were no cuts to the victim’s vaginal region. This court found that the evidence was sufficient to support a conviction for aggravated rape.
In the recent case of State v. Morgan, 99-2685 (La.App. 4 Cir. 1/17/01), 779 So.2d 17, the conviction rested solely on the testimony of the victim with no physical evidence of a rape. However, the examining physician noted that the absence of seminal fluid or spermatozoa could be explained by ejaculation outside of the vagina, which the victim said happened in her case. The physician also said the absence of physical trauma could be attributable to a rape where there was not a lot of struggle involved. There was no hymeneal tissue present, but the physician could not say whether that was related to the rape.
In the instant case, the examining physician said the victim’s tander, on a scale of one to five, was a three for her genitals. Tander is a scale of development from childhood to adult. Four to five is considered mature. The physician said a tander of three “would allow penetration without leaving any kind of lesion and she [the victim] described the penis penetrating here as a rather kind of quick not prolonged process.” This is consistent *315 with the victim’s testimony that the defendant jumped up when he heard the victim’s mother calling the victim’s nickname. Thus the lack of physical evidence of penetration does not mean that it did not occur. The trial judge found the victim’s testimony that the defendant’s penis had penetrated her credible.
|1?,A fact finder’s credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435. “If credible, the testimony of a single witness may establish the elements of a crime beyond a reasonable doubt.” See State v. Hills, 99-1750, p. 8 (La.5/16/00), 761 So.2d 516, 522, footnote 8; State v. Allen, 94-1895, p. 7 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1084. Here, the trier of fact was the trial judge, and he found the victim more credible than the defendant. In fact the court stated:
The Court would begin by noting that the victim in this matter ... is one of the best 11-year-old witnesses this court has seen in a sexual abuse type situation. The court believes her testimony was credible just like the court believes that the testimony of the defendant was totally incredible. His testimony was even contradicted by his own friends, by Sabrina [Seals].
Indeed, even a cold reading of the record supports a finding that the witness was a composed, intelligent child who gave her testimony in a straightforward manner.
On the other hand, contrary to the defendant’s testimony that he was home with his lover, a neighbor who knew his identical twin and recognized him because of that fact testified that she had seen him with the child only minutes before the crime. The defendant went so far as to speak to her and gave her his name and his identity as being the twin brother of the man she knew. The defendant’s friend, Sabrina Seals, said the defendant had gone out for the night and has not been at home as he alleged.
The trial court did not err in finding that the victim was credible in testifjdng that penetration occurred.
The evidence was sufficient.
This assignment is without merit.

J^ASSIGNMENT OF ERROR THREE:

The defendant argues the mandatory life sentence imposed for the aggravated rape is excessive.
There is a presumption that the statutory minimum sentence is constitutional. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343. The Louisiana Supreme Court in Lindsey declared that:
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672 and State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J. concurring).
In the instant case, the defendant tried to engage a young girl in sexual banter, followed her, terrified her, dragged her behind an abandoned house in her neighborhood where she previously felt safe to walk to her corner store, told her he had a weapon, bound and gagged her, choked her until she almost fainted, raped her, and was only prevented from further *316 harming the child by her mother’s prompt search for her. The defendant has put forth no facts to show that he is exceptional. The trial court did not err in ordering the mandatory life sentence.
This assignment is without merit.

J¿¿DECREE

For the foregoing reasons, the defendant’s conviction and sentence are affirmed.

CONVICTION AND SENTENCE AFFIRMED.

. See also State v. Johnson, 619 So.2d 1102, 1106 (La.App. 4 Cir.1993)

. The omitted language is the language that is applicable here: "when the victim is under the age of twelve years.”